UO EDGAR REID, LUCY UO AH CHING, EUGENE UO, and EMILE UO for the UO FAMILY, Plaintiffs

v.

AMOS GALEA`I and FAI`IVAE GALEA`I, Defendants

High Court of American Samoa
Land & Titles Division

Before REES, Associate Justice.

Counsel: For Plaintiffs, Edwin Gurr
           For Defendants, Fai`ivae Galea`i

On Motion for Preliminary Injunction:

This case is one of those that have been consolidated with LT Nos. 45-81 et al., Willis v. Fai`ivae. This motion involves only the Uo family and the Fai`ivae family.

In 1987 certain members of the Uo family sued to enjoin the defendants, members of the Fai`ivae family, from occupying land the Uo family calls Leifi. Lucy Uo commissioned a retracing of a 1915 survey of Leifi on record with the Territorial Registrar. The retracing shows two houses occupied by Fai`ivae family members to be within the boundaries of Leifi. The Fai`ivae family maintains that the retracing is incorrect and that the houses are actually within the boundaries of land claimed by Fai`ivae called Lefega.

The present motion for a preliminary injunction was occasioned by the construction, now in progress, of a third Fai`ivae house adjacent to the existing houses in the disputed area.

The Court visited the land and made the following observations:

1) The house now under construction is roughly 600 feet north of a bathing pool identified by chief Fai`ivae to be the pool called "Pugaloa."

2) The evidence at the first hearing on the consolidated cases showed that there was land called Pugaloa or Pagaloa belonging to the heirs of Matthew Hunkin; that this land was a few hundred feet to the south of Leifi; and that at the northern boundary of Pugaloa there was a bathing pool.

2) Fai`ivae defends his claim that the house is outside the boundaries of Leifi by reference to two maps that were introduced into evidence at the first hearing on the consolidated cases. One of these maps (Exhibit 32) is of property called Lepala, registered in 1915 by Mrs. Thomas Meredith. The other (Exhibit 30) is the 1915 map of Leifi, registered by Uo.

3) According to the 1915 map, Lepala should extend about 290 feet from north to south along the trail or road that traverses it.

4) According to the 1915 map and also to the position currently taken by both Uo and Fai`ivae, Leifi should extend about 200 feet from north to south along the trail or road.

5) The 1915 map of Leifi shows Pule and Tuiteleleapaga as neighbors to the south, Fai`ivae and Le`oso as neighbors to the north. The 1915 map of Lepala shows "Fai`ivae" to the south and Suafoa to the northwest. (Fai`ivae in 1915 was Alfred Hunkin, an heir and executor of Matthew Hunkin.) The 1915 map of Lepala does not say who owns the land directly to the north.

6) If the pool pointed out to the Court by Fai`ivae is the same as the pool on pre-1900 maps of the area (see, e.g., Exhibit 20), and Pugaloa was immediately adjacent to Lepala on the south, and Leifi was immediately adjacent to Lepala on the north, then Leifi begins about 290 feet north of the pool and ends about 490 feet north of the pool. In this case the Fai`ivae house now under construction is to the north of Leifi and outside its boundaries, and would appear to be within land that was claimed by Fai`ivae in 1915.

7) For the purpose of this motion the Court assumes that the current bathing pool is the same as the historic one. It is also assumed that Lepala was immediately to the north of Pugaloa. It is not clear from the 1915 maps, however, whether

Leifi was just to the north of Lepala or whether there was other land in between these two tracts.

8) One of the two neighbors to the south of Leifi in 1915 was "Pule." Lepala was registered not by "Pule" but by Mrs. Thomas Meredith.

9) The land along the road between Pugaloa and the area now in dispute between Uo and Fai`ivae appears to be occupied primarily by Chief Puletu Meredith, who has appeared in the consolidated cases on behalf of the Puletu family.

10) Puletu pointed out to the court what he claims to be the northern boundary of his land. It agrees with what the Uo family claims to be the southern boundary of Leifi. It is roughly 535 feet north of the bathing pool.

11) It would appear, therefore, that Puletu Meredith claims not only the tract registered by Mrs. Meredith, but also an area claimed to be communal land of the Puletu family extending about 245 feet to the north of this tract. (This seemed to be the gist of a third map shown to the Court by Fai`ivae and said to be Puletu's recent resurvey of the area. This map, however, has not been introduced in evidence.) Puletu appears to believe that "Leifi" begins at the north of this - area rather than immediately to the north of the Meredith survey. The Uo family appears to agree with him.

12) The Court has no strong opinion, either from looking at the land or from evidence in the current record, whether the Meredith survey of Lepala and the Uo survey of Leifi adjoined each other or whether there was an area in between that belonged to Puletu or someone else.

13) The notation on the 1915 map of Leifi to the effect that "Pule" owned the land to the south would lend some support to the existence of a Puletu tract north of the Meredith survey and south of Leifi.

14) According to composite maps prepared by a surveyor for plaintiff Tony Willis in the consolidated cases, and introduced at the first hearing as Exhibits 18 and 29, the southern boundary of Leifi would appear to be about 400 feet north of the bathing pool. This is about halfway

between Fai`ivae's estimate of about 290 feet and Uo's estimate of about 535 feet. If the surveyor was exactly correct, then the house now under construction would appear to be almost exactly on the northern boundary of Leifi. It is not clear, however, what the margin of error on the composite maps was.

15) The evidence is also insufficient to determine whether the disputed land has been occupied by the Fai`ivae family for long enough and under such circumstances as would give them title by adverse possession. Fai`ivae appeared at the hearing on this motion to be making such a claim, although it was not articulated very precisely.

## Conclusion

The Court cannot conclude from the evidence now before it whether Fai`ivae or Uo will probably prevail at trial on this issue. It also appears that a remarkable amount of progress has been made on the construction of the house during the short time it has been under way. The exterior construction appears to be almost entirely complete. We therefore no longer have the option of ordering the land to be left "as is" during the pendency of the litigation; the damage to avoided by an injunction --- that one person might turn out to have built a house on land belonging to another --- has already been done.

We note, however, that beginning construction on disputed land after notice of the opposing party's claim, and especially during the pendency of litigation to determine title to the land, is a foolhardy thing to do. Fai`ivae may proceed with the construction of the house, but he does so at his own risk. If the house now under construction is determined at trial to be on Uo property, Fai`ivae will not be entitled to compensation for the value of his improvements. His only choice will be between removing the house and abandoning it.

Counsel for the Uo family has expressed the fear that without an injunction his clients may ultimately be forced to pay for improvements made by others on their land. Counsel cites Atofau v. Lopa, 2 A.S.R.2d 45 (1985), in which the Court did invoke its equitable powers to compensate a person who had built a house even after the true landowner

154

had sued him. The plaintiff in <u>Atofau</u>, however, had let his objection languish for several years while the construction continued. He even allowed his first lawsuit to be dismissed for lack of prosecution. The Uo family, on the other hand, has "respond[ed] with diligence" to the present construction. See <u>Atofau</u>, <u>supra</u>, at 47. If the Uo family prevail at trial they will be put in possession of their land free and clear of any obligation to pay for improvements undertaken by persons who had adequate notice of their claim. This might or might not include houses built prior to 1987, but it would certainly include the house currently under construction.

Accordingly, the motion for a preliminary injunction is denied.